William H. Tegtmeyer et al., Appellees, v. Daisy C. Tegtmeyer, Appellant.

Gen. No. 39,672.

Opinion filed December 6, 1937. Rehearing denied December 20, 1937.

CHARLES S. HARVEY, of Chicago, for appellant.

G. L. WIRE, of Chicago, for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal Daisy C. Tegtmeyer seeks to reverse an order entered by the circuit court of Cook county June 17, 1937, sustaining plaintiffs' motion to dismiss her petition whereby she sought to be released from the custody of the sheriff of Cook county, who was holding her by virtue of a writ of *ne exeat* and a *mittimus* issued pursuant to a contempt order.

The record discloses that in 1925 plaintiffs filed their bill in equity in the circuit court of Cook county whereby they sought to compel defendant, Daisy C. Tegtmeyer, to account for $4,000 trust funds and any profits derived from the investment thereof. The case was heard on March 18, 1930, and a decree was entered in plaintiffs' favor, from which an appeal was prosecuted to this court, where the decree was affirmed. *Tegtmeyer v. Tegtmeyer*, 259 Ill. App. 661 (Abst.). A further appeal was prosecuted to the Supreme Court where on April 23, 1932, the judgment was affirmed. *Tegtmeyer v. Tegtmeyer*, 348 Ill. 434. After the affirmance the cause was referred to a master in chancery to take the account and on June 12, 1933, plaintiffs filed their petition praying, among other things, that a writ of *ne exeat republica* issue that defendant might be stayed from departing out of the jurisdiction of the court. Bail was fixed at $30,000. The writ was issued on the day the petition was filed and commanded the sheriff to summon the defendant to appear before the circuit court of Cook county on the first day of the July term of court, which began the third Monday of July (July 17). The sheriff was further commanded that unless defendant gave bail he should commit her to the common jail of Cook county; having

failed to give bail she was taken into custody July 27, 1933, and was confined until July 21, 1937.

In the meantime defendant refused to turn over certain property of the value of more than $30,000 to the receiver theretofore appointed by the court. She also refused to answer proper questions put to her on the hearing before the master, as a result of which the court on January 5, 1934, entered an order by which she was adjudged to be in contempt of court, and it was ordered that she stand committed to the county jail of Cook county, there to remain and be held until she delivered the property to the receiver and answered the questions. July 21, 1937, this court ordered that the appeal operate as a supersedeas in the *ne exeat* proceeding upon defendant giving bond for $5,000, and also that the appeal operate as a supersedeas in the contempt proceeding upon defendant entering into a bond for $2,000, and such bonds having been approved by the court July 21, 1937, defendant was released from the custody of the sheriff.

The chancery case which was instituted in 1925 is still pending and from that date to the present, plaintiffs have been seeking to compel defendant to render an account. Throughout the pendency of the suit divers and sundry proceedings have been had, defendant having filed petitions for writs of *habeas corpus* and other petitions and motions, seeking to be released from jail. A counter motion was filed by plaintiffs by which defendant was enjoined from filing such petitions. Neither party has rested on its oars but the battle has been continuous throughout the years.

From what we have said it is obvious that a detailing of the facts and numerous proceedings is unnecessary. Many of the facts will be found in the opinions of this court and of the Supreme Court. We mention but a few of them. Defendant and her husband invested $18,000, which included the $4,000 in question, in Chicago real estate; the husband afterward died

and she sold the property for more than $46,000. She invested the money in various stocks, including the Commonwealth Edison Company, Middle West Utilities and the American Telephone and Telegraph Company; $10,000 was also placed in escrow with the Chicago Title & Trust Co., in connection with the guaranteeing of the title to the real estate by that company when the property was sold. After the affirmance by the Supreme Court ordering the defendant to account, the cause was remanded, and on October 25, 1932, referred to a master in chancery. Five days thereafter defendant sold 200 shares of the American Telephone and Telegraph Company stock for $20,801.77 and 137 shares of Commonwealth Edison Company stock for $9,728.56, or a total of $30,530.33. This was found by the contempt order to constitute a part of the trust fund. August 25, 1933, the court entered an order requiring her to turn over the $30,530.33 and other property to a receiver theretofore appointed. Afterward the receiver made a demand upon her which was unavailing. The contempt order finds that defendant has failed to show cause why she should not deliver the moneys and property to the receiver, and that she "was and is able to bring into court and deliver and surrender to the National Builders Bank of Chicago, as receiver, . . . the said moneys and property, and her failure and refusal to surrender and deliver said moneys and property is a wilful and contumacious refusal . . . to comply with the order" of the court. No appeal has been taken from the order of contempt although it was appealable. *Hill v. Jeffery Co.,* 292 Ill. 490.

In the verified petition filed by defendant June 10, 1937, by which she sought to be released from jail, it is alleged that she is now and has been continuously confined in jail since July 27, 1933, and that she is held by the sheriff by virtue of the writ of *ne exeat* (by reason of her failure to give bond for $30,000)

that the writ was made returnable to the July, 1933 term of the circuit court of Cook county which commenced July 17, 1933; that it was not served on defendant until July 27, 1933, 10 days after the commencement of the July term; that at the time of such service the "Writ had expired, and become void by its own terms and was '*functus officio*'" and therefore she is wrongfully held by virtue of such writ. It is further alleged in the petition that the sheriff was also detaining defendant by virtue of the contempt order of January 5, 1934; that the order was "vicious and void, and in violation of the 8th and 14th Amendments to the United States Constitution, and to the Bill of Rights contained in the Illinois State Constitution, in that it contains no definite term for the detention and imprisonment of" defendant; that the contempt order was entered at the request of plaintiffs in an attempt to enforce the terms of the decree of 1930 (above mentioned) "for their own exclusive gain and benefit"; that defendant's health has been greatly undermined by her continuous confinement in jail for almost four years; "that she has lost 50 pounds in weight, has developed chronic myocarditis, bronchitis and arrested tuberculosis and anemia and any further confinement will seriously endanger her very existence"; that even if the order and *mittimus* issued in pursuance thereof were valid at the time the order was entered, they have since become "void for the reason that" defendant "has been severely punished for any alleged contempt," and to prolong her imprisonment pursuant to the contempt order will be a violation of the 8th and 14th amendments of the United States Constitution.

Defendant contends (1) that the writ of *ne exeat* in this State is "in the nature of a summons and is so regarded by the Statute, and is for the purpose of obtaining equitable bail and insuring the presence of the defendant within the jurisdiction of the Court"; that

the writ was issued on June 12, 1933, returnable July 17, 1933, but was not served on defendant until July 27, 1933, and therefore the writ was void at the time of its service on defendant. In support of this *Draper v. Draper,* 59 Ill. 119, and *O'Brien v. Haynes,* 61 Ill. 494, are cited.

The *Draper* case was a suit for divorce. Upon the bill being filed, the summons was issued returnable after the first Monday of the October following. It was returned by the sheriff October 3, "not found." Prior to that time, on September 5th, a second summons was issued, also returnable to the first Monday of October. The sheriff served this last summons October 13th. The court there said (p. 120): "The service of the second summons . . . was insufficient to confer jurisdiction. It was not served until ten days after the return day. The writ then had no vitality; it had spent its force, and the service was a nullity. . . .

"There being no service, and no appearance by the defendant . . . that court did not have jurisdiction to pronounce the decree that it did," and the decree was reversed. In the instant case it is not necessary for us to pass upon the validity of the service because, unlike the *Draper* case, defendant here entered her appearance and filed her verified answer to the petition.

In *O'Brien v. Haynes,* 61 Ill. 494, which was an action of replevin, it was also held that where a summons is served after the return date the service will be a nullity and will not give the court jurisdiction of the person of the defendant. But in that case the defendant employed counsel who filed a plea and it was held that "All defects and irregularities in the service, if any existed, were cured by the plea." We think it obvious that neither of these cases is in point. We might add, however, that although it was charged in the petition filed by plaintiffs for the writ of *ne exeat,*

that defendant was about to remove from the State and take therefrom the property which the court had theretofore decreed belonged to plaintiffs; and although defendant denied this allegation in her verified answer, yet so far as we are advised, there was no hearing of the issue raised by the petition and answer. Obviously if the charge in the petition was not sustained by proof, the writ would necessarily be quashed.

(2) Defendant contends that the court erred in not quashing the "contempt mittimus" because the punishment inflicted upon her is cruel and unusual, contrary to the 8th amendment of the United States Constitution, and to secs. 11 and 12 of art. 2 of the Constitution of this State, and that she has been deprived of her liberty without due process of law, contrary to the 5th and 14th Amendments to the United States Constitution. It has been repeatedly held that the first 10 amendments to the Federal Constitution apply only to the National Government and do not apply to the State Government. *Spics v. Illinois,* 123 U. S. 131; *Collins v. Johnston,* 237 U. S. 502. Punishment for contempt of court is not a violation of the due process clause of the 14th Amendment to the United States Constitution. *Rothschild & Co. v. Steger Piano Co.,* 256 Ill. 196. In *City of Chicago v. Peterson,* 360 Ill. 177, the court said (p. 179): "Due process of law has repeatedly been held to be an orderly proceeding wherein a person is served with notice and has an opportunity to be heard and to enforce and protect his rights before a tribunal having power to hear and determine the cause. The fact that the judgment is distasteful to one party or that the court may have erred in entering it, is not a denial of due process of law if the requirements above stated have been met."

In the instant case no contention is made by defendant that the court did not have jurisdiction of the *ne exeat* proceeding and was authorized to hear and

determine the issues raised by the petition and answer thereto. Nor is any suggestion made that the court did not have jurisdiction of the person of defendant and of the subject matter involved when it issued its order finding her to be in contempt of court.

(3) A further contention is made that defendant should be discharged because sec. 11 of our constitution provides: "All penalties shall be proportioned to the nature of the offense"; and sec. 12: "No person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is strong presumption of fraud." And counsel for defendant further say that "where it appears that the act done is due to a mistaken view of the rights of the offender, the punishment, where imprisonment is deemed necessary, should be for a definite period and should not be severe. . . . It would not be right for a judge sitting in a criminal court, and compelled to sentence a prisoner, to direct that his imprisonment should continue until some condition, however reasonable the condition might be, had been complied with. A prisoner is entitled, when he has undergone his punishment, to an unconditional release." In support of this counsel cites *En Re Maria Annie Davies,* 21 Q. B. Div. 236, *Nisbet v. Tindall,* 115 Ga. 374; *People v. La Mothe,* 331 Ill. 351 and *Tudor v. Firebaugh,* 364 Ill. 283. In the *Tudor* and the *LaMothe* cases, trustees were held in contempt of court because of the wrongful use of trust funds. On review by the Supreme Court it appeared that the moneys were only in the constructive possession of the trustees—that they did not have actual possession of the trust funds, and although they were decreed to repay the money, yet when they answered in the contempt proceedings that they did not have the funds and had no means with which to pay the judgment, it

was held that they should not be imprisoned as for contempt. In the *Tudor* case the court said (p. 287): "The power of a court of equity to punish for contempt by imprisonment upon the refusal of a trustee to pay over money actually received and wrongfully withheld is well established. . . . It is no defense in such case that the fund has been devoted to other purposes. (*People v. Zimmer*, 238 Ill. 607. . . .)" The court then quoted sec. 12 of art. 2 of our constitution and continuing said (pp. 288–89): "In the enforcement of this constitutional provision every doubt should be resolved in favor of the liberty of the citizen. No one should be imprisoned for a failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it. Courts may imprison for wilful defiance, but they will not imprison for failure to comply with a decree where the disobedience is not willful.

"No decision of this court upholding commitment for contempt is based upon a constructive possession of the money because of the defendant's association with the person who had actually and properly received the money. No man can be legally imprisoned for a failure to pay over money he does not have and never had. . . . In *O'Callaghan v. O'Callaghan, supra,* it was said: 'The court is empowered to punish willful obstinacy in such cases by imprisonment, but we think the spirit of our constitution forbids that the pecuniary inability of the party, not resulting from his fraudulent conduct to produce that condition, cannot be punished as a contempt by imprisonment.'

"Where the neglect or refusal to perform the decree is not from mere contumacy but from the want of means—the result of misfortune not induced by any fraudulent conduct on the part of the defendant—the party will be compelled to adopt some mode consistent with the practice in the courts, other than imprison-

ment, to enforce the decree. . . . Imprisonment for non-compliance with a decree to pay money, unless willful, or unless upon a refusal of defendant, upon proper demand made, to deliver up his estate in satisfaction of the decree, is within the inhibition of the constitution against imprisonment for debt.'' And it was held that since the party found guilty of contempt had never actually had possession of the money, the order finding him guilty of contempt was unwarranted.

In the instant case the court expressly found that the defendant had more than $30,000 belonging to the trust estate; that at the time the contempt order was entered she was able to turn this money over to the receiver but contumaciously refused to do so. From this it is clear that under the holding of the two Illinois cases just referred to, and in fact all of the cases to which our attention has been called, defendant cannot say that the court was not warranted in finding her to be guilty of contempt of court. If, in such a case as the one at bar, a court decrees that a person has funds in his possession which should be turned over to the receiver of the court and is able to do so, but refuses to obey the decree of the court, then obviously the court would be rendered impotent and we would have neither law nor order but everyone could do as he or she pleased. Of course, such a situation cannot be countenanced by the courts for a moment. The same reasoning is also true as to the defendant's refusal to answer questions put to her touching the trust funds, which she refused to answer. As heretofore stated, the order adjudging her to be in contempt of court is still in full force and effect and we find no complaint in the brief of counsel for defendant that the action of the court was not in accordance with law. Defendant's counsel admits the law is as above stated; he says: ''At the outset, attorney for defendant would like to make this point clear to this Court, that he is entirely in accord with the well accepted and well

founded doctrine that all Courts have, and should have, the power to punish for contempt, and that such power is a necessary and integral part of the independence of the judiciary and is essential to the performance of their duties and to the enforcement of their decrees, . . . it is quite apparent that the Courts could not function properly without such power. It is also, however, necessary that such power should not be absolute and uncontrolled, especially in a government of, by and for the people as we find it in the United States, so that we find the makers of the Constitution of the United States placing certain safeguards for the protection of the people in this respect.'' Counsel then refers to the provisions of the United States and the State Constitutions above mentioned.

In the *Davies* case, 21 Q. B. Div. 236, cited, Mrs. Davies was imprisoned for contempt of court for violating an injunction. The term for which she was imprisoned was indefinite. At the expiration of 18 months the court, on its own motion, discharged her from custody, Mathew, J., saying: ''My Lord agrees with me that Mrs. Davies should now be discharged; but for the observations which follow I alone am responsible. . . . It should be borne in mind that contempt of court is a criminal offense, punishable as a misdemeanor by fine and imprisonment or both; . . . The punishment should be commensurate with the offense. . . . A commitment until the offender consented to give evidence, would not, in my judgment, be the proper order to make. On the other hand, where it appears that the act done is due to a mistaken view of the rights of the offender, the punishment, where imprisonment is deemed necessary, should be for a definite period and should not be severe.'' Lord Coleridge, C. J., in a separate opinion said: ''I assent to the proposed order, but I do so distinctly on the ground that it is assented to on behalf of the plaintiff in the action as affording him adequate protection.

Where the Court has given its decision, and the person against whom the Court has decided defies the Court, ignores its decision, and persists in persecuting the person in whose favour the Court has decided with groundless claims and vexatious actions, however reluctant the Court may be to do so, it has, in my opinion, no choice but to enforce its judgment by the imprisonment of the contumacious person." In that case it also appeared that before releasing Mrs. Davies the court required her written assurance that there would be no further violation of the injunction. In Illinois it has long been the firmly established law that for a penal contempt the imprisonment should be for a fixed period of time. *Rothschild & Co. v. Steger Piano Co.*, 256 Ill. 196. But the contempt of which defendant is found guilty is remedial where the period is and should be indefinite—until compliance with the order of court.

Counsel for defendant also cites *McClung v. McClung*, 33 N. J. Eq. 462, where a defendant was discharged from imprisonment for contempt for disobeying an order of court, although he had not purged himself of his contempt. That was an opinion by the trial court. In that case a respondent in a divorce case was adjudged to be in contempt for failing to pay alimony although he apparently was able to do so. The court said he would discharge defendant although he had not cleared himself of contempt, but required him to transfer to a receiver the right to collect rent from property owned by defendant.

In *Nisbet v. Tindall*, (115 Ga. 374) it appeared that Tindall as receiver had misappropriated a large sum of money which came into his possession as receiver, which he failed to account for when ordered to do so by the court. He was committed to jail until he had purged himself by repaying the money and until he had been sufficiently punished or he showed that he had been sufficiently punished and was unable to pay by reason

of his poverty. He made several attempts to obtain his release which were ineffectual until he had served 138 days, when he was released. The court said (p. 375): "A hearing was then had and Judge Roberts passed an order reciting that the applicant had purged himself of the contempt for which he was committed to jail, by showing that he was unable by reason of poverty to restore the money he had been ordered to restore, and adjudging that he be discharged from further custody." And continuing (pp. 377–78): "It should now be regarded as definitely and finally settled that, in all cases of this character, the question of discharging from custody an officer of the court, who has been imprisoned for not paying over money or delivering property, must be left to the sound discretion of the trial judge, and that he shall have exclusive control of the matter. The evidence heard by Judge Roberts was amply sufficient to establish the fact that Tindall was unable from poverty to pay over the money he had misappropriated; and this being so, we can not say that the judge erred in ordering the prisoner discharged. From a metaphysical standpoint, it seems that his Honor must have necessarily been satisfied that the imprisonment, covering a period of 138 days, had been sufficiently long to vindicate the dignity of the court; and certainly he must have concluded that further imprisonment would not have the effect of compelling obedience to the order requiring Tindall to pay over the money." The facts in that case are not similar to the facts in the case before us. In that case the receiver, who was adjudged to be in contempt of court, established the fact that he was unable to repay the money he had misappropriated. And the court held that confinement in jail of 138 days was sufficient to vindicate the dignity of the court; while in the instant case the contempt order shows that defendant has the money in her possession, is able to turn it over and that she deliberately refuses to answer pertinent

questions, all of which have been adjudicated by the order of contempt entered January 5, 1934, and from which no appeal is taken. Nor is any argument made by counsel for defendant that defendant is unable to comply with the contempt order, and we think it obvious that if she did so she would be released in the contempt and *ne exeat* phases of the matter. It is true that defendant made a motion in this court for leave to file a typewritten brief in lieu of a printed one, in which she swore that she was unable to pay for the printing of the brief and was unable to obtain the necessary money from her friends or relatives owing to the fact that she was already greatly indebted to them, but no argument is made by counsel in his brief on this question. If a showing were made that defendant was now unable to turn over the money to the receiver as ordered and if she would truthfully answer the question a different question would be presented and the ruling of the Georgia court in the *Nisbet* case would be applicable. But no such showing has been attempted. If defendant has been long confined in jail it is because she has defied the court. As has often been quaintly expressed, defendant carries the key to her prison in her own pocket.

On the contempt hearing defendant testified that ''I have been a professional woman,'' and her testimony shows she is an intelligent woman, but sets herself up in defiance of the law even after the issues had been adjudicated against her by the Supreme Court of this State.

Upon a consideration of the entire case, we see no way under the law that we can order her release from custody. The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

McSURELY and MATCHETT, JJ., concur.