William H. Tegtmeyer et al., Defendants in Error, v. Daisy C. Tegtmeyer, Plaintiff in Error.

Gen. No. 40,991.

170

Opinion

filed June 24, 1940.  Rehearing denied July 8, 1940.

GOLD & LIEBMAN, of Chicago, for plaintiff in error; CHARLES LIEBMAN, of counsel.

GEORGE L. WIRE, of Chicago, for defendants in error.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this writ of error, Daisy C. Tegtmeyer seeks to reverse an order entered June 12, 1933, awarding a writ of *ne exeat republica* and an order entered January 5, 1934, adjudging her to be in contempt of court for failure to answer questions and turn over property. Having failed to make bail fixed at $30,000 in the *ne exeat* proceeding, she was taken into custody July 27, 1933.  She was also held by the sheriff under a mittimus issued pursuant to the contempt order.

Counsel for plaintiffs contend that a writ of error is abolished as a means of review in civil cases and § 74 of the Civil Practice Act, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.074], and cases construing that act are relied upon. We do not stop to discuss this phase of the case except to say that the Civil Practice Act went into effect January 1, 1934. The suit in this case was filed in 1925 and the writ of *ne exeat* issued in 1933, so that the procedure is not controlled by the Civil Practice Act. See Rule 1 of the Supreme Court.

In 1925, plaintiffs filed their bill in equity in the circuit court of Cook county to compel Mrs. Tegtmeyer to account for a $4,000 trust fund and any profits from the investment thereof. After the issue was made up, the cause was referred to a master who took the evidence, made up his report and recommended that a decree be entered in accordance with the prayer of the bill. Afterward the matter was heard before the chancellor and March 18, 1930, a decree was entered substantially as recommended by the master, from which Mrs. Tegtmeyer prosecuted an appeal to this court, where the decree was affirmed by another division of this court, the opinion being by Mr. Justice GRIDLEY, *Tegtmeyer v. Tegtmeyer,* 259 Ill. App. 661 (Abst.). A further appeal was prosecuted to the Supreme Court where the judgment of this court was affirmed April 23, 1932. *Tegtmeyer v. Tegtmeyer,* 348 Ill. 434. After the affirmance by the Supreme Court, the cause was referred to a master in chancery to take the account and while the matter was being there heard the record discloses that plaintiffs had considerable difficulty in having Mrs. Tegtmeyer appear before the master. June 12, 1933, plaintiffs filed their verified petition praying that Mrs. Tegtmeyer be required to answer the petition, but not under oath, and that she be stayed by the People's writ of *ne exeat republica* from departing out of the jurisdiction of the court; that she be removed as trustee of the claimed trust funds; that a receiver be

appointed to take charge, custody and control of all property found to belong to the trust fund, and that she be required to immediately turn over the property to such receiver or successor trustee. August 5, 1933, Mrs. Tegtmeyer filed her answer to the petition.

In the petition, which is 29 pages, it is alleged the decree was entered March 18, 1930, in which it was found that Mrs. Tegtmeyer had in her possession certain property and securities which were charged with a trust in favor of plaintiffs and that she was ordered to account; that the matter was afterward referred to a master to take the account. It then sets up the proceedings had and the findings of the decree, the affirmance by the Appellate and Supreme Courts and specified certain property received by Mrs. Tegtmeyer, and that she was ordered to account. These facts will sufficiently appear from the opinions of the Appellate and Supreme Courts and need not be repeated here. We might say, however, that the petition goes into specific details as to the property, real and personal in which the trust fund, together with other funds, was invested and which the court decreed should be accounted for by Mrs. Tegtmeyer; that there were various hearings before the master on the accounting and diligent efforts to secure an attendance by Mrs. Tegtmeyer before the master so that she might be interrogated as to the use made of the trust fund in investments, reinvestments, etc.; that prior to November 1, 1932, Mrs. Tegtmeyer regularly appeared before the master but since that date and subsequent to the sale of certain of the securities by Mrs. Tegtmeyer (for which it was claimed she was required to account), she did not attend before the master and that counsel for Mrs. Tegtmeyer stated their reason for being unable to have her present was that they were unable to communicate with her; that on April 18, the master issued his subpoena for her to appear which was served on her at her residence in Chicago but that she did not obey the subpoena and did

not attend the hearing before the master; that at the request of counsel for defendant, the hearing was continued before the master from time to time and in the meantime Mrs. Tegtmeyer sold many of the securities which were the subject matter of the accounting; that upon learning of such sales, plaintiffs filed their petition and obtained an injunction restraining the transfer of some stock standing in the name of Mrs. Tegtmeyer; that she was not administering the trust in the interest of the beneficiaries but was antagonistic to them and stood in defiance of orders and processes of the court in refusing to give information as to the trust fund; that she "has converted into cash stocks, bonds and property belonging to the said trust fund with the design and intent to conceal herself and said funds and depart from the jurisdiction of this court, and remove said cash and all trust property and all her property from the jurisdiction of this court," and that petitioners would be greatly hindered and delayed in their efforts to realize the amounts due them upon the stating of the account; that she had threatened to depart from the State and the jurisdiction of the court and take her property with her and prevent petitioners from realizing anything on account of the trust property, regardless of the result of the litigation.

Mrs. Tegtmeyer, in her answer, admitted the entry of the decree of March 18, 1930; that pursuant to the decree she filed her report and account; that by the terms of the decree the $4,000 was adjudged to belong to complainants, together with $13,000 which belonged to her and was invested in Chicago real estate; that the decree finds this real estate was sold and a net balance realized of more than $46,000 but she avers that the net balance was $37,562.65. The answer further avers that she was required to deposit with the Chicago Title & Trust Company $10,000 so that the title to the real estate would be guaranteed by the Title Company, etc. The answer then sets up in considerable detail what she did about

the sale of certain of the property claimed to belong to the trust fund; admits that at different times she sold certain of the stocks but that they were her own property and what she has received for them is ''much less than her proportionate share'' of the property mentioned in the decree; ''denies that she at any time threatened to leave the State of Illinois or the jurisdiction of this Court or to take from Illinois and jurisdiction of this Court any of said property so decreed as belonging to complainants or any part thereof.''

·Defendant contends (1) that the decree of March 18, 1930, ''and consequently, the *ne exeat* and contempt orders ancillary to it, are void, because the Courts in Illinois have never had jurisdiction of the subject matter of this proceeding. Although this was generally treated by the Courts and counsel as a lawsuit involving the preservation and administration of a trust, it appears from the record that in truth and in fact the proceedings constituted an administration by the Illinois Courts of assets admittedly belonging to an administrator appointed and acting under the laws and Courts of Iowa. We contend that the Circuit Court, and also the Appellate Courts acting in proceedings initiated in the Circuit Court, do not have jurisdiction of the subject matter of the proceedings, because under the Illinois Constitution, Circuit Courts have no original jurisdiction in Probate proceedings; and because the Courts in Illinois do not have jurisdiction, in any event, of the subject matter of proceedings for the distribution of property of a foreign administrator, acquired by him as such in a foreign jurisdiction.'' And the argument in support of this is that the assets of the estates of Louise Tegtmeyer and Henry Tegtmeyer were being administered in the District Court of Des Moines county, at Burlington, Iowa. There is no merit in this contention. That question was litigated and decided adversely to Mrs. Tegtmeyer when an appeal was taken from the decree of March 18, 1930. In the opinion of this court,

written by Mr. Justice GRIDLEY, the court said: "Equally without merit, in our opinion, is counsel's further contention that the circuit court was without jurisdiction to enter the decree in question for the reason that the *situs* of the trust fund was in Iowa. The fact that the present proceeding is against the widow [Daisy C. Tegtmeyer] of Edward Tegtmeyer, deceased (on whose estate no administration was had), does not prevent a court of equity from taking jurisdiction, as she may be considered a trustee *de son tort.* (*Lehnard v. Specht,* 180 Ill. 208, 216.) Furthermore, as a suit to enforce a trust is transitory and not local, a court of chancery has jurisdiction of such a suit whenever the trustee may be found, regardless of where the property is located. (22 Ency. Pl. & Pr., p. 20; *Johnson v. Gibson,* 116 Ill. 294, 302; *Craft v. Indiana etc. R. Co.,* 166 Ill. 580, 593.) And it appears that, after the creation of the trust in 1913, the fund was invested in land in Cook County, Illinois (where both the trustee, Edward, and his wife, Daisy, resided, and continued to reside until his death, and she thereafter), and the title to the land was taken in both as joint tenants. Hence the *situs* of the trust fund and the avails thereof remained in Cook County, Illinois." Moreover when the case was here on another occasion (292 Ill. App. 434) another ground for quashing the writ was urged—the law does not permit reviewing cases by piecemeal.

But counsel for defendant says: "Even though the original decree below [1930] has been affirmed by this Court and by the Supreme Court on appeal, the question of jurisdiction of the subject matter may be raised at this point," and cites the case of *People v. May,* 276 Ill. 332; same case reported in 251 Ill. 54.

In 251 Ill. 54, suit was brought on his official bond against the clerk of the circuit court of St. Clair county on the ground that in approving an appeal bond as directed by the court, he accepted as sole surety a nonresident of Illinois. A demurrer to the declaration was

sustained, which was affirmed by the Appellate Court but reversed by the Supreme Court. In that case the question of the jurisdiction was in no way mentioned. After the case was retried in the circuit court, plaintiff filed an amended declaration; 32 pleas were interposed, general replications were filed to 17 of them and demurrers were sustained to the remainder. There was a verdict and judgment in plaintiff's favor which, on appeal, was affirmed by the Appellate Court and by the Supreme Court. [276 Ill. 332.] The Supreme Court in its opinion said defendants moved to dismiss the suit "on the ground that this court had no jurisdiction of the subject matter when the record was in this court before, and therefore the judgment reversing the judgment of the Appellate Court was a nullity and the judgment of the Appellate Court in their favor was final." But the court continuing said: "it is never too late to question the jurisdiction of a court over the subject matter of a particular case and consent of the parties will not confer such jurisdiction." The court overruled defendants' motion to dismiss and affirmed the judgment. As stated in the *May* case, the question of jurisdiction was not passed upon by the trial or Appellate Courts. If it had been, that question would have been determined and could not again be relitigated. *Stoll v. Gottlieb,* 305 U. S. 165.

If the law was as counsel for defendant contends, then there would be no end to litigation. If in the trial court its jurisdiction over the subject matter was questioned and overruled and the same contention was made on appeal to the Appellate and Supreme Courts, and denied, obviously that would be a termination of the question and the matter could not be litigated in any other court at any other time or place. This is the holding of our United States Supreme Court in the *Gottlieb* case, and we think no case in any court has ever held to the contrary. The question of jurisdiction was settled in 259 Ill. App. 661.

As to the sufficiency of the petition for the writ of *ne exeat,* counsel for defendant says the petition "shows that it does not contain a single fact upon which to base the conclusion that Daisy C. Tegtmeyer was about to depart from the state," and *Brophy v. Sheppard,* 124 Ill. App. 512, is cited to the point that the writ should not have been issued. We might say that since we hold the trial court had jurisdiction both of the person and the subject matter, and since the contention now made was not urged in the trial court, it is elementary that in the state of the record such point can not be urged for the first time in a court of review. But, as stated in our former opinion, [292 Ill. App. 434] "although it was charged in the petition filed by plaintiffs for the writ of *ne exeat,* that defendant was about to remove from the State and take therefrom the property which the court had theretofore decreed belonged to plaintiffs; and although defendant denied this allegation in her . . . answer, yet so far as we are advised, there was no hearing of· the issue raised by the petition and answer. Obviously if the charge in the petition was not sustained by proof, the writ would necessarily be quashed." We have quoted from both the petition and answer and think that a *prima facie* case was made by the allegations of the verified petition and nothing to the contrary was held in the *Brophy* case and the issue raised by the petition and answer is still undetermined in the trial court.

We might suggest, however, that if application were made to the chancellor to reduce the amount of the bond, which was fixed in July, 1933 at $30,000, in view of what has transpired since that time, the amount of the bond might well be very materially reduced. July 8, 1937, this court ordered that the appeal operate as a supersedeas in the *ne exeat* phase of the case, upon Mrs. Tegtmeyer giving bond for $5,000, and also that the appeal operate as a supersedeas in the contempt proceeding upon her entering into a bond for $2,000.

Such bonds were approved and Mrs. Tegtmeyer released. [See 292 Ill. App. 434.] After the affirmance by us she voluntarily returned to the custody of the sheriff. Afterward in the writ of error proceeding now before us, we ordered that the writ be made a supersedeas as to both phases of the case upon her giving bond of $1,000. Such bond was approved and filed and she was released. There is no complaint so far as we are advised that Mrs. Tegtmeyer has left the jurisdiction of the court or intends to do so.

We might also say that although the original bill sought to recover only the $4,000 with interest thereon at 4%, which $4,000 was, left with the administrator under the terms of the written agreement entered into between all of the parties, including defendant, on October 20, 1913, yet defendant, Mrs. Tegtmeyer, sought to prevent the recovery from her of the $4,000 although there was no defense, legal or equitable, of any kind or character. By the terms of the trust agreement, the $4,000 should have been returned without question.

As to the contempt order:

Defendant contends that the order finding her guilty of contempt is erroneous and must be reversed because "It is so drawn that this Court cannot tell from inspecting it that the defendant could have performed the acts mentioned therein, or that she was guilty of a contempt in not performing them"—that the order is ambiguous and this court can not, from a reading of it, "determine what acts on her part would amount to compliance therewith." And counsel says that the order of commitment is not punitive but remedial. Continuing counsel says defendant "was directed in open Court to surrender to the receiver the money and property mentioned and described in the order of August 5, 1933, but refused to do so;" that she was ordered and directed to discover and disclose the disposition and location of moneys described in the order and persisted in her refusal to do so; that she was directed to answer fully

and correctly without evasion the questions propounded to her before the master and to answer "competent, pertinent, relevant, proper and material questions" which are not set out in the order and which she had refused to answer; that she was ordered and directed to report and account fully and disclose all investments, etc., concerning the proceeds of the sale of the property which she refused to do and that in each of these defendant's conduct was willful and contumacious.

The order finding defendant guilty of contempt covers more than 112 printed pages of the record. It contains a copy of the decree of 1930, recites what had theretofore taken place in the suit; a certificate of the master in chancery; questions put to Mrs. Tegtmeyer on the hearing before the master, which she refused to answer (which were clearly pertinent), and that she stated she refused to answer them not on the ground that her answer would tend to incriminate her but "that is my private funds, and, as I said, I am the only one that is being made to comply with the laws, and if others can break the laws, then so can I, and I am going to take that stand."

We think it would serve no purpose to detail the questions put to her before the master but we are clearly of opinion that her refusal to answer them was contrary to the law and wholly unwarranted. That if the order was too broad in requiring defendant to answer "competent, pertinent, relevant, proper and material questions," neither the master nor the trial court will have any difficulty in passing on that phase of the matter. But on the whole we think the questions were pertinent and proper. And as said in our former opinion [292 Ill. App. 434–447], "Nor is any argument made by counsel for defendant that defendant is unable to comply with the contempt order, and we think it obvious that if she did so she would be released in the contempt and *ne exeat* phases of the matter. . . . If a showing were made that defendant was now unable to turn

over the money to the receiver as ordered and if she would truthfully answer the question a different question would be presented and the ruling of the Georgia court in the *Nisbet* case would be applicable. But no such showing has been attempted. If defendant has been long confined in jail it is because she has defied the court. As has often been quaintly expressed, defendant carries the key to her prison in her own pocket.''

The record is in the same condition now as it was when it was here on the former appeal. The order awarding the writ of *ne exeat* and the order holding defendant to be in contempt of court are affirmed.

*Orders affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.