MONTELL J. HUBBARD, Plaintiff-Appellee, *v.* PHYLLIS V. HUBBARD, Defendant-Appellant.

First District (4th Division)  Nos. 78-1948, 79-1103 cons.

Opinion filed June 5, 1980.—Rehearing denied June 26, 1980.

---

Howard T. Savage, of Chicago (Howard O. Edmonds, of counsel), for appellant.

James J. Seaberry, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Phyllis V. Hubbard, defendant, appeals from the order of the circuit court of Cook County directing the sale of her one-half interest in certain real estate to her former husband, Montell J. Hubbard, plaintiff.

On appeal defendant contends: (1) the trial court's *ex parte* order of sale is void since it was entered without notice to her; (2) the trial court lacked statutory authority to direct the sale; and (3) the trial court improperly denied the motion to vacate the sale order. We affirm.

The parties were married in 1944, separated in 1975, and on November 18, 1977, after a noncontested hearing, a judgment of dissolution of marriage, in form approved by the respective parties and their counsel, was entered.

The dissolution judgment incorporated the terms and provisions of an oral property-settlement agreement. Essentially, the incorporated agreement provided for the allocation and award of certain personal property, the equal division of securities and savings accounts and the sale and equal division of the proceeds of jointly owned real estate which included the marital residence in Chicago, Illinois, vacant lots in Bitely, Michigan, and improved real estate in Lawrence, Michigan. The only controversy before us relates to the Lawrence real estate, a 12.3-acre tract improved with a 1½-story house and a two-car garage. With respect to this property, paragraph 5(c) of the dissolution judgment states:

> "The parties hereto further agree that they own jointly a piece of property in Lawrence, Michigan, which shall be appraised and sold, after normal costs, commission, deductions and prorations, net figure is to be divided equally between the parties hereto, * * *."

The record discloses that following the entry of the dissolution judgment on November 18, 1977, the parties sought to sell the Lawrence property. On June 13, 1978, the defendant, contending that the plaintiff was uncooperative in promoting a sale of the property, filed her petition in the trial court seeking certain relief. Among other things, the

defendant's petition alluded to the need for injunctive relief to prevent the plaintiff from interfering with a sale of the realty; asserted that the plaintiff, contrary to the agreement of the parties, was bringing personal effects into the home and had planted a garden in the back yard; contended that certain repairs were required because of the past winter damage to the property; referred to an attached appraisal of the realty;[1] and asked that the court allow the defendant to take charge of the sale.

Pursuant to the defendant's petition, the trial court entered an order, initialed and designated as "agreed." The order placed substantial control in the defendant to effectuate a sale of the property and set forth "that Phillis Hubbard shall take charge of the sale thru [sic] the local Century 21 office for which the parties hereto have signed a listing agreement."

The order of June 13, 1978, required that defendant obtain a written estimate of repair costs and also stated that "all costs in connection with the sale of the property shall be paid from the proceeds from the sale prior to dividing the balance between the parties hereto * * *." The order further provided that a status hearing before the court was to take place on July 6, 1978 (later deferred to July 27, 1978).

It appears the listing with the Century 21 agency originally had been entered into by the parties on January 6, 1978, and established a sale price of $48,000. On June 12, 1978, the parties extended the listing to November 30, 1978, at a sale price of $43,000.

On July 27, 1978, the parties and their counsel appeared before the trial judge. The order entered on that date called for the continued cooperation of the parties in concluding a sale of the property and also required the parties "to accept the best offer submitted in this courtroom as of 10:30 a.m. on Friday, August 4, 1978, and the parties shall be present in court at that time." The order was drawn and submitted by defendant's counsel. No appeal from that order was taken.

The record further discloses that on July 26, 1978, Susie Johnson executed an offer to buy the Lawrence property for the sum of $43,000, subject to various conditions including the ability to effect a sale of her home in Florida and to obtain necessary bank financing with which to purchase the subject real estate. While the record shows that the parties

---

[1] The appraisal is in the form of a letter dated September 19, 1977 written by Audrey R. Krader, a realtor-associate of the Century 21 real estate office in South Haven, Michigan. The letter, directed to the defendant, reads as follows:

"With regards to my visit to your property located on Red Arrow Hwy. between Hartford and Lawrence, Mich.

Taking into consideration the 12 acres, and your home and the two car garage located in the rear of the property it is my opinion that this parcel would market in the area of a low of $48,000.00 and a high of $51,000.00

Having the property located directly to the east dug out as severaly as it is could be considered a determent [sic].

If I can be of any possible service to you please feel free to call on me at any time."

signed a separate acceptance of the Johnson offer, the record also discloses the transaction was abandoned sometime prior to August 31, 1978.

In accordance with the court order of July 27, 1978, on August 4, 1978, the parties and their counsel again appeared before the trial court. The transcript of the hearing on that date indicates clearly that the parties, at that time, expressed the desire to effect a prompt sale of the property; they also called attention to needed repairs and acknowledged the contingent nature of the Johnson offer of $43,000. The transcript also referred to defendant's knowledge of plaintiff's offer to pay defendant $19,000 net for her interest in the property if the sale to Johnson for $43,000 could not be implemented by August 31, 1978.

After the hearing on August 4, 1978, the trial court entered an order which was prepared and submitted by defendant's counsel. The August 4 order, referring to the Johnson offer, states that the parties, in open court, had executed a contract to sell the property for $43,000. The order also provides:

"C. That in the event said sale is not ready to be closed on 8/31/78, allowing time for appropriate title work to be completed, then the plaintiff shall pay to the defendant the sum of $19,000.00 for her interest in said property."

No appeal from this order was taken.

On August 31, 1978, plaintiff and his counsel appeared before the trial judge. Counsel for plaintiff represented to the court that the defendant was not present and that her counsel had notified him that his representation of the defendant had been terminated at the defendant's direction. The case was held until the end of the call, and when the defendant did not appear, the court entered its order in conformity with its previous orders of July 27, 1978, and August 4, 1978. The trial judge found that because no other buyer of the property was presented, the plaintiff was required to deposit with the clerk of court the sum of $19,000 as payment for the defendant's interest in the subject property. The order detailed the legal description of the property and directed an associate judge of the land title division to execute the deed of conveyance in the event the defendant failed to execute and deliver her deed to the plaintiff within 10 days. Thereupon, plaintiff deposited with the clerk of the court the sum required of him.

On September 29, 1978, defendant, through new counsel, presented her petition to the trial court seeking to vacate the order of August 31, 1978. In defendant's petition to vacate, defendant contended that: (1) she had no notice or knowledge of a hearing being set before the trial court on August 31, 1978; (2) the parties had a signed contract with Susie Johnson to sell the property to her for $43,000 (a copy of the agreement was

attached to the petition); (3) the sum of "$1001.00 [*sic*]" did not represent one-half of the fair cash market value of the real estate; (4) the property, if properly repaired, could be sold for $48,000; and (5) the listing agreement with the real estate broker extended to November 30, 1978. After hearing on October 18, 1978, the trial court entered its order denying defendant's petition to vacate the order of August 31, 1978. On November 16, 1978, defendant filed her notice of appeal from the order of August 31 directing execution of the deed of conveyance to plaintiff and the order of October 18 denying defendant's petition to vacate the August 31 order.

OPINION

I

Initially, defendant alleges the order of August 4, 1978, contained no provision indicating that a further hearing before the trial court was to take place on August 31. Defendant thereby argues that since the order entered on August 31 was entered without proper prior notice to her, the order is a nullity and void. Additionally, defendant asserts the order of August 31 awarding defendant's interest in the Lawrence property to plaintiff for the sum of $19,000 was tantamount to a deprivation of her property without due process of law since she was not given an opportunity to resist the sale of her property interest to the plaintiff. In view of our analysis of the factual and legal issues involved here, we find no need to address the constitutional point raised by the defendant. We do find it necessary to review in some detail certain of the facts surrounding the court hearings in which defendant and her counsel participated prior to the entry of this August 31 order and the conclusions we reach in consequence of those proceedings.

The record discloses the post-judgment actions were initiated by the defendant. It was defendant's position that plaintiff was uncooperative and was resisting a prompt sale of the Lawrence property. Plaintiff desired an immediate sale and accordingly undertook court action to accomplish it.

On June 13, 1978, defendant presented a petition which directly led to the entry of the order effectively giving her control over the sale of the property. Both defendant and plaintiff signed the listing and the listing extension form with the local broker. Subsequently defendant joined with plaintiff in accepting the Johnson offer to purchase despite the offer's inherent weaknesses by virtue of its expressed contingencies. Significantly, the defendant does not now deny, nor did she previously deny, the fact that the Johnson sale was later abandoned.

Pursuant to the relief sought by the defendant, the court monitored the activities of the parties relating to a possible sale of the real estate. Thus, on July 27, 1978, the parties and their counsel appeared before the

trial court. After the hearing, and by apparent agreement, defendant's attorney prepared and presented an order which the court entered. Under the order, the parties were bound to accept the best offer to purchase submitted in the courtroom on August 4, 1978. The order delineated the rights of the parties with respect to the sale. The terms of the order expressly differed from the terms of sale defined in the dissolution judgment.

On August 4, 1978, pursuant to the order of July 27, the parties and their attorneys again appeared before the trial court. After hearing, the court entered an order drafted and presented by counsel for defendant. This order directed that the sale of defendant's interest in the property to plaintiff for $19,000 was to be concluded on August 31, if the sale to Johnson for $43,000 of both parties' interests was not ready to close on that date.

While the order of August 4, 1978, fails to expressly indicate further proceedings would take place before the trial judge on August 31 to implement the provisions of the August 4 order, consideration of the totality of the evidence, as set forth above, could lead to no other conclusion. The record clearly discloses defendant knew or should have known court action would take place on August 31, 1978. It is apparent defendant waived an express provision of a continued date in the order of August 4. This is particularly true where, as here, defendant herself filed the originating petition seeking relief, and defendant's own counsel drafted and presented to the trial court the order which specifically set forth the terms of the August 31, 1978, sale of defendant's interest in the property to plaintiff.

Our view that defendant had actual knowledge that court action would take place on August 31 is supported by the trial court's comments to the parties during the August 4 hearing:

"If this doesn't work August 31st, no more deal with this one, then I'll force her to give it to you. If this doesn't work, you have your nineteen ready August 31st. You understand what I'm saying?"

■ It is well established that a party to an action has the right to be present at trial. (*Village of Elmwood Park v. Keegan* (1975), 26 Ill. App. 3d 925, 326 N.E.2d 92.) But a duty is imposed upon a litigant to follow the progress of his case. (*Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 311, 357 N.E.2d 518; *Illinois Marine Towing Corp. v. Black* (1979), 74 Ill. App. 3d 909, 913-14, 393 N.E.2d 707.) It is also true that where a party, through is own inadvertence, does not appear on the day set for trial, it is not error for the court to proceed with trial on the merits. *Williams v. Pearson* (1961), 23 Ill. 2d 357, 177 N.E.2d 856.[2]

---

[2] The court in *Williams* held that when plaintiffs failed to appear for trial, the court was not compelled to dismiss the cause for want of prosecution but could proceed to hear defendants' evidence and enter a directed verdict for defendants.

■■ Based on the surrounding circumstances and the orders already entered, it was reasonable for the trial court to find that the defendant was fully aware that a further hearing would take place on August 31, 1978. There was no reason why the trial court could not proceed with further action on that date. It was incumbent on the defendant to pursue the very action that she herself had instituted. See *Calbreath v. Beckwith* (1930), 260 Ill. App. 7; *Hickman v. Ritchey Coal Co.* (1929), 252 Ill. App. 560.

Defendant, however, citing *Wilson v. Moore* (1973), 13 Ill. App. 3d 632, 301 N.E.2d 39, contends that an order entered without notice to the other party is void. Defendant points out that in *Wilson*, the attorney, without notice to the adverse parties or their counsel, obtained an order awarding him attorney's fees. In reversing, the appellate court held that the order was void because it was entered without prior notice. .

*Wilson*, however, is readily distinguishable from the case before us since it involved a totally independent ancillary proceeding, where, after settlement of the injury suit by the plaintiffs, counsel for plaintiffs, without notice to the defendants, proceeded to obtain an award of attorneys fees against defendants. More importantly, *Wilson*, citing *Vlahakis v. Panker* (1971), 3 Ill. App. 3d 126, 278 N.E.2d 523 (abstract), enunciates the principle that notice of a hearing date may be waived.

In *Gray v. Gray* (1978), 57 Ill. App. 3d 1, 372 N.E.2d 909, this court examined both *Wilson* and *Vlahakis* and noted that where statutes or rules so specify, or where principles of justice so require, an adverse party must be given notice that a motion will be presented to the court; but that under certain circumstances formal notice is not required. The *Gray* court stated:

> "The court had recessed, indicating it would reconvene. The hearing had not yet been terminated by the court. Thus, we feel that under these facts the applicable rule is that both parties are bound to be in court and are charged with knowledge that any proper order or motion may be made at any time, in the absence of a rule excusing attendance unless notice is given. [Citations.]" 57 Ill. App. 3d 1, 7, 372 N.E.2d 909, 914.

Similarly in this case, defendant was proceeding to attain her expressed goal of concluding the sale of her interest in the real estate. Her personal participation, her counsel's activities in the presentation of petitions, argument, preparation and submission of orders, readily indicate the defendant's total involvement in the proceedings and an awareness of the date and time of each court hearing. Based on the actions of the parties and their counsel and the evidence disclosed by the record, we find no merit to the defendant's contention that she was without notice of the hearing that was to take place on August 31, 1978.

Our view of the evidence compels us to find that the defendant, in processing the relief she herself sought, knew or should have known that

additional court action would take place on August 31 by way of implementing the provision of the August 4 order. We conclude that defendant waived the requirement of an exact demarcation by court order or new notice of motion that there would be additional proceedings on August 31, 1978.

II

Next, defendant asserts that statutorily, the trial court had no authority to enter its order of August 31, 1978, granting the plaintiff the right to acquire the interest of the defendant in the Lawrence property by payment of $19,000. Defendant contends that under section 502(f) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (Ill. Rev. Stat. 1977, ch. 40, par. 502(f)), the trial court, without the express agreement of both parties, was precluded from modifying the provisions of a property settlement agreement incorporated into a judgment of dissolution of marriage.

Section 502(f) of the Dissolution Act (Ill. Rev. Stat. 1977, ch. 40, par. 502(f)) states:

> "(f) Except for terms concerning the support, custody or visitation of children, *the judgment may expressly preclude or limit modification of terms set forth in the judgment if the separation agreement so provides.* Otherwise, terms of a separation agreement set forth in the judgment are automatically modified by modification of the judgment." (Emphasis added.)

While we agree with the defendant that under section 502(f) the trial court may be precluded from modifying the terms of the incorporated property agreement, we nevertheless find that section 502(f) is not applicable in this case.

An examination of the oral property settlement agreement incorporated in the dissolution judgment before us fails to disclose any language that "expressly preclude[s] or limit[s] modification of terms set forth in the judgment * * *." (Ill. Rev. Stat. 1977, ch. 40, par. 502(f).) In fact, the language used to describe the terms and provisions of the dissolution judgment indicates that possible revisions and modifications were foreseeable, especially in connection with a sale of the real estate. Here, it was clear the parties were in accord that a sale of the real estate was to take place despite the fact that the details of implementing the sale were, on their face, less than specific.

The loosely drawn language of paragraph 5(c) of the dissolution judgment which relates to the sale of the subject real estate is of such vagueness, uncertainty and indefiniteness that, save agreement by the parties, it would necessitate court action to implement a sale, as actually

happened here. We also note that the court orders leading to the sale of the defendant's property interest to plaintiff could be interpreted as an implementation of the provisions of the dissolution judgment rather than as a revision or modification of the terms of the judgment. Thus, we cannot conclusively determine that the trial court modified or revised the dissolution judgment.

Additionally, we note paragraphs 3 and 4 of the judgmental provisions of the dissolution judgment state:

"3. That said agreement and all of its provisions are hereby incorporated into this Judgment; that the Husband and the Wife perform, carry out and execute the provisions of said Agreement incorporated herein, and this Court reserves jurisdiction of the parties hereto and the subject matter hereof;

(a) To enforce the provisions of the Agreement incorporated herein, and;

(b) To enter such further orders as may be necessary and proper under the circumstances.

4. That this court shall retain jurisdiction of this cause until the terms of this Decree have been fully complied with in all respects."

Paragraph 3(b) above, in its sweep, gave the trial court broad authority to resolve the property sale dispute in the manner it did. As previously noted, the parties and their respective counsel fully approved the form, language and contents of the dissolution judgment.

It is of particular interest to note that the defendant herself, in the petition filed by her on June 13, 1978, to effect a sale of the property, set forth in paragraph 8 of the petition the following:

"That this court has jurisdiction over the parties hereto and can require that the parties cooperate in connection with the ultimate sale of the premises and can govern the actions of the parties hereto by an appropriate Order of this Court."

■■ It is apparent that the foregoing language of the defendant's petition buttresses the conclusion that the parties contemplated the possible need of court action to accomplish the ultimate sale of the realty on terms agreeable to the parties or as determined by the court. Having sought the aid of the court and having participated fully in the proceedings to resolve the sale dispute by court action, the defendant cannot now disavow the court's authority because the matter was not concluded as she desired.

As noted, we find no basis for accepting defendant's contention that section 502(f) of the Dissolution Act (Ill. Rev. Stat. 1977, ch. 40, par. 502(f)) precluded the trial court from entering the order of August 31, 1978. Also, we find no relevance in the cases cited by defendant in support of her contention that, even aside from the restrictions of section 502(f),

the court could not enter its order of August 31, 1978, if there was a showing that the incorporated agreement was procured by fraud, coercion, or is contrary to law, public policy or morals. *Reininger v. Reininger* (1978), 67 Ill. App. 3d 21, 384 N.E.2d 546.

There is no issue before this court to the effect that the incorporated agreement was procured by fraud or coercion or that its terms are contrary to law, public policy or morals. The question addressed here is whether the incorporated agreement was carried out in a manner consistent with the intentions of the parties. As stated in *Chodl v. Chodl* (1976), 37 Ill. App. 3d 52, 54, 344 N.E.2d 711, 713:

> "Within the 30 days in which the trial court retains jurisdiction to correct its decrees, it is vested with discretion, however, to amend agreed property settlement provisions of a decree in order to carry out the agreement consistent with the intention of the parties when its exercise of discretion does not alter substantive rights of the parties. (See *Harbin v. Harbin*, 12 Mich. App. 320, 162 N.W.2d 822, 825 (1968).)"

As in *Chodl*, and being outside the constraints of section 502(f) of the Dissolution Act, the court here was able "to amend [the] agreed property settlement provisions of a decree in order to carry out the agreement consistent with the intentions of the parties when its exercise of discretion [did] not alter substantive rights of the parties * * *."

We find the trial court had authority to enter its August 31, 1978, order and to thereby carry out the intentions of the parties as expressed in the terms of the incorporated agreement.

### III

Finally, defendant contends that the trial court exceeded its discretionary powers by refusing to vacate the August 31, 1978, order.

We have examined the record and find no basis to conclude that the trial court's refusal to vacate its order of August 31, 1978, in any way violated the defendant's right to fundamental justice or that an improper application of discretion was manifested by the trial court's action.

Accordingly, for the reasons stated, the decision of the trial court is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.