438

MARY M. DAVIS, Plaintiff-Appellee, *v.* JAMES E. DAVIS, Defendant-Appellant.

Fourth District   No. 4—82—0754

Opinion filed May 11, 1983.

Frederic M. Grosser, of Grosser & Hays, of Champaign, for appellant.

William R. Scott, of Allen & Korkowski & Associates, of Rantoul, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Defendant appeals an order of the circuit court of Champaign County, the effect of which was to declare a forfeiture of certain real estate owned by the plaintiff and defendant and disposed of under a property settlement agreement incorporated into the order dissolving their marriage.

The order of dissolution was entered on September 20, 1977. The real estate in question had been the marital home of the parties and the settlement agreement, as incorporated into the dissolution order, provided: (1) that the equitable interest in the home was to be divided between the parties; (2) an appraisal was to be obtained from which the balances due on two mortgages were to be deducted, the net figure representing the equitable interest of the parties; (3) the defendant was then to execute a judgment note in favor of the plaintiff in

the amount of her share of the equity, and the plaintiff was to place in escrow a quitclaim deed conveying to defendant all of her interest in the premises; on satisfactory proof that defendant had paid in full on the note, the escrow agent was to deliver the deed to him. The critical language of the agreement which is here in controversy deals with default on the part of the defendant. It provides in pertinent part as follows:

"Said judgment note shall provide that conditions of default on said note are as follows: (a) failure to make the monthly installment payment to MARY M. DAVIS by the due date, or (b) to be in default to either MERCANTILE MORTGAGE COMPANY, holder of the first mortgage, or AVCO, holder of the second mortgage on the premises, or (c) to allow the balances of any and all liens and mortgages on said premises to exceed Twenty Thousand ($20,000.00) Dollars. That in the event of default, JAMES E. DAVIS forfeits any and all interest of whatsoever kind and nature that he may have in said premises including his equitable interest and any moneys paid on any of the notes."

The dissolution order further provided that the trial court retained jurisdiction for enforcing the provisions of the order. In September 1982 plaintiff brought a petition seeking a declaration of forfeiture, alleging that defendant had failed to make seven payments to her, had allowed the mortgage balances to exceed the specified limit, and had failed to make prompt payments to the mortgagees. At the hearing on the petition it was unequivocally established that defendant had failed to make the required monthly payments to the plaintiff for at least seven months. The trial court declared a forfeiture and ordered the defendant to execute a quitclaim deed to plaintiff of all of his interest in the premises. This appeal followed.

The positions of the parties are straightforward and are not complex: defendant claims that what is involved is a contract for deed and that proceedings for forfeiture of such an instrument are governed by the Forcible Entry and Detainer Act (FEDA) (Ill. Rev. Stat. 1981, ch. 110, par. 9—101 et seq.); he especially notes that he should be entitled to the protections of the FEDA, the 30-day notice under section 9—104 and the stay of judgment under section 9—110; plaintiff, contra, maintains that the proceeding is the enforcement of the terms of an agreement incorporated into a dissolution order and is governed by section 502(e) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1981, ch. 40, par. 502(e)) and that the provisions of the FEDA have no application.

■■ ■ While it appears somewhat atypical to incorporate an installment contract in a dissolution order, we know of no reason to forfend such a provision. By such incorporation it becomes part of the court's order, its subservient nature as a contract giving way to the dominant character of an adjudication. The enforcement of such provisions is governed by section 502(e) of the IMDMA, which provides:

"Terms of the agreement set forth in the judgment are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms." Ill. Rev. Stat. 1981, ch. 40, par. 502(e).

On the other hand, an installment contract, not standing under the aegis of an adjudication but rather in its own proper nature, would ordinarily be enforced under the provisions of the FEDA. We note in passing, however, that in 1963 the FEDA was amended to provide:

"Nothing herein contained shall be construed as affecting the right of a seller of such premises to any lawful remedy or relief other than that provided by Part 1 of Article IX of this Act." (Ill. Rev. Stat. 1981, ch.110, par. 9—110.)

Precisely what such other lawful remedy or relief might be is not at issue here, and we offer no opinion as to it.

The statute does enervate defendant's argument that the FEDA is the only possible relief available to a contract seller. Defendant cites *French v. Willer* (1888), 126 Ill. 611, 18 N.E. 811, for this proposition. That case is inapposite. The sole question before the court in *French* was whether the plaintiff had obtained personal jurisdiction over the defendant by virtue of a *narratio et cognovit* clause. The supreme court held he could not and that a special statutory proceeding could not be altered by engrafting upon it provisions not specified by the legislature.

What the trial court did in the case at bar was simply to enforce the agreement of the parties. The wisdom of that agreement was not before the trial court, nor is it before us. Analogous circumstances have frequently appeared in prior cases. In *Hubbard v. Hubbard* (1980), 84 Ill. App. 3d 761, 405 N.E.2d 1362, the trial court implemented the parties' agreement by ordering the husband to pay to the wife $19,000 for her equity, although the agreement did not provide for any specific sum, but was to be determined by the sale price of the property. The premises remained unsold, so the trial court fixed upon the sum, ordered it paid, and ordered the wife to quitclaim her interest. On appeal she argued that the trial court had no jurisdiction since it was modifying the agreement of the parties. The appellate

court disagreed, saying, "We also note that the court orders leading to the sale of defendant's property interest to plaintiff could be interpreted as an implementation of the provisions of the dissolution judgment rather than as a revision or modification of the terms of the judgment." 84 Ill. App. 3d 761, 769, 405 N.E.2d 1362, 1368.

Analogous circumstances also appeared in *Brevet v. Brevet* (1942), 316 Ill. App. 406, 45 N.E.2d 199. In that case the trial court ordered a conveyance by the wife to the husband, having held that she had no interest in the property. On appeal the wife argued lack of subject matter jurisdiction, to which the court responded:

"Petitioner in this case did not ask for any modification of the terms of the divorce decree but merely asked that the terms of that decree be enforced. See *Totten v. Totten*, 299 Ill. 43, where it was held that a court of equity possesses power to control the manner of the execution of its decrees. See also *Bobowski v. Bobowski*, 242 Ill. 524, 530; *Cohen v. Cohen*, 291 Ill. App. 39, 49; *Oglesby v. Pearce*, 68 Ill. 220. In *Tegtmeyer v. Tegtmeyer*, 292 Ill. App. 434, 443, this court said that if a court of chancery had no power to enforce its decrees 'obviously the court would be rendered impotent and we would have neither law nor order but everyone could do as he or she pleased. Of course, such a situation cannot be countenanced by the courts for a moment.' Many other cases are to the same effect." 316 Ill. App. 406, 409, 45 N.E.2d 199, 200.

These authorities, together with many similar ones, as well as the statute, section 502(e) of the IMDMA, fully support the action of the trial court in enforcing the agreement. Policy arguments can be made that the protections of the FEDA should extend to all contract purchasers. Section 9—110 was obviously intended to protect the contract purchaser by giving him an opportunity to cure a default before a forfeiture could be effected. However, if such protections are to be executed to all contract purchasers, regardless of the origin of their contracts, that is a matter of legislative action and beyond the prerogatives of this court.

The order of the circuit court of Champaign County is affirmed.

Affirmed.

MILLS and MILLER, JJ., concur.